IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOREEN BURGESS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOLLAR TREE STORES, INC. | : | NO. 14-1727 |

<u>MEMORANDUM</u>

Dalzell, J.                                                                                                                February 4, 2015

Plaintiff Doreen Burgess brought this employment discrimination suit alleging that Dollar Tree Stores, Inc. ("Dollar Tree") terminated her in retaliation for opposing discrimination and harassment in the workplace. Because we find that the plaintiff has failed to make a <u>prima</u> <u>facie</u> case of retaliation and cannot show that the defendant's adverse employment action was pretextual, we will grant the defendant's motion for summary judgment.

This case was brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and we therefore have original jurisdiction based on federal question jurisdiction under 28 U.S.C. § 1331.

I.     **Factual and Procedural Background**

The agreed-upon facts are scant. Doreen Burgess began working at Dollar Tree in the fall of 2010, was promoted to assistant manager early the following year, and, in January of 2012, began reporting to store manager Randi Freeman. Pl. SOF at ¶¶ 1, 2, 5; Def. SOF at ¶¶ 1, 2, 6.

The parties disagree about the circumstances that led to Ms. Burgess's February 10, 2012 suspension and February 17, 2012 termination. Ms. Burgess alleges that she called Dollar Tree's ethics hotline five times between January of 2012 and February 17, 2012, the date of her

termination. Pl. SOF at ¶¶ 8, 12, 11, 12; see also Mem. of Law at 9.  In a call in January 2012, Ms. Burgess complained of the unfair way in which Ms. Freeman treated her and other associates.  Pl. SOF at ¶ 8.[1]  She contends that in her final call she complained that Ms. Freeman had stroked her hair and asked if Ms. Burgess had "ever been to the other side," which Ms. Burgess's colleague later explained referred to Ms. Freeman being a lesbian.  Id. at ¶ 11.  The same day, Ms. Burgess alleges, Ms. Freeman threatened to rip a cross necklace off Ms. Burgess's neck, id. at ¶ 15, and subsequently threatened her with termination.  Id. at ¶ 13.  Ms. Burgess called the internal complaint line to report this behavior.  Id. at ¶ 17.  She further testified that Ms. Freeman confronted her about the complaint calls.  Id. at ¶ 14.

Ms. Burgess contends that Ms. Freeman retaliated for her complaints by cutting her hours.  Id. at ¶ 19.  She alleges that when she was working late on a Saturday night in February, Ms. Freeman directed her to open the store at 8:30 a.m. the following Sunday morning.  Id. at ¶ 20.  Ms. Burgess arrived at 7:00 a.m. and was joined at 7:30 a.m. by another employee.  Id. at ¶¶ 21-25.  When they entered the store at 8:15 a.m., the other employee found he was not on the schedule and became upset; Ms. Burgess tried in vain to reach Ms. Freeman.  Id. at ¶¶ 27-29.  The following day, supervisors Scott Reese and Jerry Joka confronted Ms. Burgess and accused her of working off the clock since she opened before 8:30 a.m. -- a claim she denied.  Id. at ¶¶ 30-33.  Reese instructed her to write a statement that the company owed her money for hours worked that Sunday.  Ms. Burgess states she agreed to write the statement only because she was scared and wanted to leave.  Id. at ¶ 38.  She maintains that her termination for working off the clock was pretextual because, she says, she never worked off the clock but merely arrived early to work.  See MSJ at 11-12.  Rather, she argues that she was fired for her complaints to the

---

[1] Burgess states that she was told at the time that the call was being recorded, Pl. SOF at ¶ 9, but neither party provided transcripts or recordings of her calls.

company hotline about the sexual harassment and religious discrimination she experienced. Id. at 9-11.

For its part, Dollar Tree contends that it maintains a formal non-discrimination and non-harassment policy under which an individual who has experienced either harassment or discrimination may discuss such behavior through Dollar Tree's toll-free "Careline"[2] or up the corporate ladder to the store manager, the district manager and so on. Def. SOF at ¶¶ 8-11. Dollar Tree's wage and hour policy requires employees to be paid in full for all time worked; "[i]n furtherance of this policy," it permits employees on store premises only for work shifts (or shopping during normal business hours). Id. at ¶¶ 21-24. Dollar Tree reports that it discovered Ms. Burgess working off the clock, a claim she admitted in her February 10, 2012 meeting with Reese. Id. at ¶¶ 27-29. This information was corroborated by interviews with Ms. Burgess's associate, whom they claim she directed to work off the clock. Id. at ¶ 33. Ms. Burgess was immediately suspended. Id. at ¶ 32. Reese and his associate so informed Mary Ann Fulner, the local human resources director, who recommended that Ms. Burgess's employment be terminated. Id. at ¶¶ 34, 35. Dollar Tree terminated Ms. Burgess on February 17, 2012 for violating its wage and hour compliance policy. Id. at ¶ 36.

With respect to Ms. Burgess's Careline calls, Dollar Tree points us to her deposition testimony in which she admitted that she did not complain about discriminatory treatment in any of the telephone calls. Id. at ¶ 15. As to Ms. Burgess's final call, she testified that she spoke to Ms. Fulner on February 11, 2012, and informed her that Ms. Freeman had played with her hair, had asked if she had "ever been to the other side," and had told her to take off her cross necklace

---

[2] Ms. Burgess erroneously refers to this 800 number as the "ethics line." See note 2 to SOF ¶ 14.

or Ms. Freeman would rip it off.  Id. at ¶¶ 16-18.  Ms. Burgess testified that she told Ms. Fulner that she felt she was "being fired for the wrong thing."  Id. at ¶ 19.

Ms. Burgess and her husband Richard filed suit in the Court of Common Pleas of Philadelphia County, and the defendant timely removed on March 24, 2014.  The plaintiffs filed a four-count amended complaint on May 6, 2014.  On June 3, 2014, Dollar Tree moved for partial dismissal.  Dollar Tree sought dismissal of Doreen Burgess's claims against the individual defendants as well as her hostile work environment and religious discrimination claims.  MTD at 6-11.  As to Richard Burgess, Dollar Tree argued that he lacked standing to assert an employment discrimination claim and could not assert loss of consortium as a matter of law.  Id. at 4, 12.  We granted Dollar Tree's partial motion to dismiss on September 30, 2014 and dismissed Mr. Burgess from the action and dismissing all counts except the retaliation count now before us.  We denied Ms. Burgess's motion for reconsideration on October 30, 2014.  On November 3, 2014, we denied Ms. Burgess's motion to again amend her complaint.

Defendant's motion for summary judgment followed.

## II.     **Legal Standard**

Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving for summary judgment bears the burden of proving no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).  To that end, the movant must inform the district court of the basis for its argument by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the movant is the

defendant or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case," National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  The movant need only point to the lack of evidence supporting the non-movant's claim.  Id.

The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006).   A factual dispute is "genuine" if it turns on "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. at 248.  That is, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment.  Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 248).

> [T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  Id.  The nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  It is well-established that Rule 56 obliges the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

5

designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(c).  Specifically, Rule 56(e) provides in relevant part that "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

### III. Applicable Law

Under the familiar McDonnell Douglas burden-shifting framework, to make a prima facie case of retaliation a plaintiff must show that she engaged in a protected activity and suffered an adverse employment action, and that there was a causal link between her protected activity and the adverse employment action.  Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  "Protected activity" includes both making formal charges of discrimination against an employer as well as lodging informal protests of discriminatory employment practices -- including taking those complaints to management.  Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).  As our Court of Appeals recently explained,

> When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity. That is, in determining whether a plaintiff adequately opposed discrimination, we look to the message conveyed by a plaintiff's conduct rather than the means of conveyance. The complaint must allege that the opposition was to discrimination based on a protected category, such as age or race.

Daniels v. School District of Philadelphia, -- F.3d --, 2015 WL 252428 at *7 (3d Cir. Jan. 20, 2015) (internal citations, quotation marks and alterations omitted).  "This standard requires an

6

'objectively reasonable belief' that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." Id. (quoting Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008). It is well-established that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not violate Title VII, Clark County School District v. Breeden, 532 U.S. 268, 271 (2001), and therefore complaints of such behavior do not constitute a protected activity. Daniels, 2015 WL 252428 at *8.

As to the causal link, the Supreme Court held in University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2534 (2013) that a plaintiff making a retaliation claim "must establish that. . . her protected activity was a but-for cause of the alleged adverse action by the employer." To do so, she may show the required causal link through temporal proximity between the protected activity and the adverse employment action or, failing to show that temporal proximity, through a "pattern of antagonism" following the protected activity. Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (internal citations omitted).

Once the plaintiff makes her showings, the burden shifts to the employer to produce evidence of a legitimate, non-retaliatory reason for its adverse employment action. Marra, 497 F.3d at 300. If the employer offers such a reason, the burden shifts back to the plaintiff to show that the "proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. (quoting Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)). To show that a defendant's reason is pretextual, a plaintiff must submit circumstantial or direct evidence that "casts sufficient doubt" on each of the proffered legitimate reasons in order to help a fact-finder to conclude that "each reason was a fabrication" or allows the factfinder to

infer that "discrimination was more likely than not a motivating or determinative cause" of the termination.  Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

> [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons. . . .  While this standard places a difficult burden on the plaintiff, it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.

Id. at 765 (internal quotation marks and citations omitted) (emphasis in original).

Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times.  Daniels, 2015 WL 252428 at *7; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).


**IV.    Discussion**

    **A.    Dollar Tree's Motion for Summary Judgment**

Dollar Tree urges us to grant its motion because it contends that Ms. Burgess cannot meet the first element of a prima facie case because she did not complain of discriminatory behavior in her calls to the hotline.  MSJ at 4 and 5.  Even if we were to find that her conversation with Ms. Fulner (in which Ms. Burgess complained that Ms. Freeman played with her hair, asked her if she had "ever been to the other side," told her to take off her cross necklace and threatened termination), was protected activity, Dollar Tree argues that Ms. Burgess cannot show but-for causation because she had already been suspended for working off the clock and believed Dollar Tree intended to terminate her employment.  Id.  Finally, even were Ms. Burgess able to make out a prima facie case, Dollar Tree contends, it legitimately terminated her employment for a

non-retaliatory reason -- her violation of its wage and hour policy by working off-hours. Id. at 6. It offers her signed statement to that very effect. Id. at 7. And, the defendant argues, Ms. Burgess offers no evidence that its reason for her termination is pretextual. Id. at 8-9.

Ms. Burgess relies entirely on her deposition testimony to argue that Dollar Tree is not entitled to summary judgment. She maintains that her phone calls "included complaints to [d]efendant about the sexual harassment . . . and [Ms.] Freeman's religious discrimination." Pl. Br. in Opp. at 9. She disputes Dollar Tree's characterization of her deposition testimony because "she called the [hotline] in January [of] 2012[] to complain specifically about how she was being treated." Id. at 11. She argues that Ms. Freeman's confrontation with her about the Careline calls two days before she was terminated shows the necessary temporal proximity between her protected activity and her termination. Id. Finally, she contends that Dollar Tree's purported reason for her termination is pretextual because her testimony "casts significant doubt on the legitimacy" of Dollar Tree's reason for terminating her. Id. She testified that she never worked off the clock and was forced to draft and sign her statement. Id. at 12.

### B. The First Five Telephone Calls

Ms. Burgess's deposition testimony does not support her contention that she complained of discriminatory behavior in her first five calls to the hotline. She testified that in January of 2012, when she first called, she "actually called the ethic hotline about the way that I was being treated, the way that my associates were being treated and how unfair I thought it was." Burgess Dep. at 55:12-15. Of Ms. Freeman, she testified, "[S]he was threatening our jobs." Id. at 56:7. The second complaint was about Ms. Freeman's treatment of customers, id. at 58:22-23, a charge that Ms. Burgess did not elaborate on. "The third time [Ms. Freeman] actually got into [a] cashier's face, Amanda Barker's face, and told her to quit her job. She'd be better off flipping

9

burgers at Burger King." Id. at 59:10-13.  In her fourth call, Ms. Burgess testified, she complained that Ms. Freeman "started tormenting" a co-worker when she found out Ms. Burgess had hired him.  Id. at 59:26.  The fifth time she called Ms. Burgess reported to the Careline "that [Ms.] Freeman was talking bad about me to an associate.  Nicole, that was her name. . . .  Nicole wanted to apply for assistant manager and [Ms.] Freeman turned around and said, 'What, another Doreen? We don't need her.' "  Id. at 60:8-14.

Ms. Burgess's telephone calls are unquestionably complaints to management.  But those calls notably do not mention any discriminatory employment practice, formally or informally.  Our Court of Appeals requires a complaint to "allege that the opposition was to discrimination based on a protected category, such as age or race."  Daniels, 2015 WL 252428 at *7.  Ms. Burgess made no such complaints nor can she demonstrate an "objectively reasonable belief" that the activity she complains of constitutes unlawful discrimination.  Id.

Because Ms. Burgess's first five calls do not constitute protected activity, she cannot make out a prima facie case of retaliation based on them.

### C. Ms. Burgess's Last Complaint To The Careline

Ms. Burgess's report of her own confrontations with Ms. Freeman constitutes protected activity.  Ms. Burgess testified that in early February she reported to the Careline that Ms. Freeman stroked her hair and asked if she had "ever been to the other side" -- a possible intimation of sexual interest.  That same day, she further testified, Ms. Freeman threatened to rip the cross off Ms. Burgess's neck, threatened her with termination, and confronted her about the Careline calls.  Ms. Burgess was unsure whether she had initiated the call to the hotline or complained after when "Mary from HR" --  likely Ms. Fulner from Human Resources -- called

her on February 11, 2012, the day after she was suspended for violating Dollar Tree's wage and hour policy. Id. at 72:6-14.

The Supreme Court has explained that complaints about offhand comments and isolated incidents do not violate Title VII (unless they are "extremely serious"), Clark County School District, 532 U.S. at 271. But workplace conduct is not measured in isolation. It must be judged by context, such as "whether it is physically threatening or humiliating[] or a mere offensive utterance." Id. (internal citation omitted). The behavior Ms. Burgess described was not "so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment," id. at 270 (internal citations omitted). Nonetheless, viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, Ms. Freeman's alleged behavior toward plaintiff was physically threatening and humiliating. Therefore, Ms. Burgess's complaints of such behavior constituted protected activity. Daniels, 2015 WL 252428 at *8.

But Ms. Burgess cannot show that her protected activity was a but-for cause of her termination. She had been suspended the day before the last Careline complaint for violating Dollar Tree's wage and hour policy. Thus, while she can show temporal proximity between the protected activity and the adverse employment action, she cannot show the required causal link. See Kachmar, 109 F.3d at 177.

To establish such a causal link, Ms. Burgess must establish that her last Careline conversation was a but-for cause of Dollar Tree's decision to terminate her. See Nassar, 133 S.Ct. at 2534. As the Supreme Court explained, "this standard requires the plaintiff to show 'that the harm would not have occurred' in the absence of -- that is, but for -- the defendant's conduct." Id. at 2525 (quoting Restatement of Torts §431, Comment a (negligence) and § 432(1)

and Comment a). On February 10, 2012, Dollar Tree confronted Ms. Burgess with video evidence that she was on the job before the start of her shift in violation of its wage and hour policy and then it suspended her. Her complaint the following day, therefore, can scarcely be the but-for cause for her termination six days later.

The Supreme Court pointedly explained in Nassar why retaliation claims require a heightened causality standard:

> Consider in this regard the case of an employee who knows that he or she is about to be fired for poor performance, given a lower pay grade, or even just transferred to a different assignment or location. To forestall that lawful action, he or she might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation. If respondent were to prevail in his argument here, that claim could be established by a lessened causation standard, all in order to prevent the undesired change in employment circumstances. Even if the employer could escape judgment after trial, the lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment stage. . . . It would be inconsistent with the structure and operation of Title VII to so raise the costs, both financial and reputational, on an employer whose actions were not in fact the result of any discriminatory or retaliatory intent.

Id. at 2532.

Finally, Ms. Burgess contends that Dollar Tree's stated reason for terminating her employment -- her wage and hour violation -- is merely pretextual because she claimed that she had never worked off the clock. She testified that she was confined to a room and obliged to rewrite her statement several times until it satisfied Dollar Tree management. Burgess Dep. at 77:23-80:1.

To discredit an employer's proffered reason for termination, an employee must do more than show the decision was mistaken. Fuentes, 32 F.3d at 765. Ms. Burgess argues she "casts significant doubt on the legitimacy" of Dollar Tree's reason for terminating her by offering an

alternative description of her termination. Pl. Br. in Opp. at 11. But her version alone is not enough to show that Dollar Tree's reason is "a fabrication" or that "discrimination was more likely than not a motivating or determinative cause" of her termination. Fuentes, 32 F. 3d at 762.

Rather, as our Court of Appeals explained in Fuentes, to counter a proffered reason for termination, Ms. Burgess must show weaknesses, implausibilities, inconsistencies or contradictions in Dollar Tree's account regarding her termination. She must adduce evidence, for example, of past unlawful discriminatory treatment, or that Dollar Tree treated other similarly-situated persons not of her protected class more favorably, or that it discriminated against others. Id. at 765. In short, Ms. Burgess must point to some evidence extrinsic to her own testimony to support her contention of pretext. She has not. Indeed, she has offered no evidence to support her testimony. Because she cannot discredit Dollar Tree's proffered explanation for her termination, Ms. Burgess has failed to show that its reason for her termination was pretextual.

## V.    Conclusion

For the reasons articulated above, we hold that Ms. Burgess has failed to make a prima facie showing that her termination was the result of retaliatory discrimination. Her first five Careline calls lacked any description of discriminatory behavior and her final call was not the "but-for" cause of her termination. Because she has failed to provide evidence to establish the existence of an element essential to her case, on which she bears the burden of proof at trial, we must grant Dollar Tree's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

\_\_/s/ Stewart Dalzell, J.\_\_
Stewart Dalzell, J.